at L. Mr. McCoy for the appellants, Mr. Whittlesey for the appellees. Good morning, your honors. Good morning. Patrick McCoy for the tribe. I'd like to reserve two minutes for rebuttal, if needed. I've got three points I'd like to make concerning the tribe's motion for intervention and the timing for its motion below that I think will help put our timing in context and help with the decision we're asking for. First, the tribe is the real party in interest in this litigation. Second, the county is an ineffective trustee. And third, the county's own dilatory prosecution of this case. First, as to the tribe, it's clear from the complaint, and especially the amended complaint, which was amended three years into this litigation and amended to point more specifically and more pointedly and meaningfully at the tribe's concerns. The amended complaint added charges concerning the tribe's historical presence on the Rancheria. So it's clear that the tribe is the real party in interest here, and that complaint aims specifically, not generally, but specifically at the tribe, not the government's interest. The complaint asked for the compact to be invalidated, that the Rancheria is not Indian lands under IGRA, and effectively, that the Rancheria is not a reservation under federal law, which goes to purpose as well. Is that really any more true that the tribe is or is not the real party in interest under the amended complaint than it was under the original complaint? I think it is more of the real party in interest. I mean, I think that it was clear that under the original complaint, the tribe was the real party in interest. The county did ask for the compact to be invalidated. Granted, they asked for more dramatic relief against the tribe in the amended complaint, but the question I'm leading to is, why did you wait so long? We waited so long primarily because we – and this goes to my second point, but I'll certainly be happy to answer your question – which is that we had every right to rely upon the government's representation of the tribe's interest here. This is not any defendant. This is the United States government, which has a government-to-government relationship with this tribe. It has a general trust obligation to this Indian tribe, and it's supposed to be acting in this tribe's best interest. So when there's an obvious remedy for disposing of a lawsuit that so directly affects the tribe, and when the government is using that remedy in other contexts, just like this, with absent Indian tribes whose interests are implicated, it needs to be acting on the best interest of the tribe. The concern that is in Rule 24 is that you, representing the tribe, claims an interest relating to the property or transaction that is the subject of the action. What is the interest that is the subject of this action? Well, specifically, the interest raised in the amended complaint, which is to invalidate the tribe's compact. The compact, okay. And it's the Department of the Interior that approved that compact, and that is defending its approval of it, correct? It is the department that approved the compact, but tied in with that – And the department is defending its approval of the contract. They defended the specific concern that they wanted to do that. So if the interest that is the subject of the lawsuit is the validity of the approval of the compact, how can you possibly claim that the Department of Justice is not adequately representing that interest? That is, they have an obligation to do that, and they're doing it. In our view, the complaint raises other interests that are directed at the tribe, and those interests are clearly implicated. There would be no compact complaint by the county. Its complaint is based entirely on the fact, in its view, that the ranchery is not a reservation under federal law. So it necessarily, the compact complaint, it's styled as an APA complaint, but clearly the complaint is meant to get at the tribe's interest. There would be a no compact complaint if the county didn't claim that the ranchery is not a reservation. So those two are tied inexorably, as we see it. Yes, so the Department of Justice is defending on the basis that it is a reservation. Well, I don't know if they're defending on the basis that it's a reservation. It doesn't have to be a reservation. Under 1151, it can be allotments, or it can be a dependent Indian community, or it can be a reservation. That's certainly true. And the settlement agreement that you rely on doesn't call it a reservation. It just says Indian country, so it could be any of those things. I believe the word reservation is used in there. It does restore the boundaries of the ranchery. Restores the boundaries of the ranchery, and the paragraph I think you rely on says that it's agreed that this is Indian country. And it shall be treated as a reservation for all purposes under federal law. But the United States was not a part of that settlement. That goes to my point, Your Honor. And neither was the tribe. The tribe absolutely was. I thought it was the individual members that brought all this. The complaint was amended in the Tilley-Hardwick litigation so that once the first of the two stipulations happened to restore the status of the tribes, then the complaint was amended to add those tribes as parties. So the 1987 stipulation that restored this ranchery as a reservation status, the tribe was a party. But I want to get back to the point. The interest that is the subject of this litigation is the validity of the Interior Department's approval of the complaint. But that could not exist, Your Honor, without arguing that, as the county has explained in its papers, without arguing that the ranchery is not a reservation. I agree there are arguments. There are various arguments underlying that interest. But the test is not what the arguments are. And, in fact, there's a line of cases that say you can't intervene to protect an interest that's being adequately protected just because you have different arguments. Specifically as to Rule 19 and the fact that the government has not used that here for the benefit of this tribe and has used it in other litigation for the benefit of other tribes who are absent, and the fact that Rule 19 is not a mere strategic litigation decision, it's a clear and obvious remedy that could dispose of this litigation. If they're our trustee, why wouldn't they choose to use that here? Is that any more available now than it was much earlier in this litigation? Timeliness is really what we're doing here. The answer is yes, and that's because of the events of 2011, which we highlighted in our briefs. So would you say that the Rule 19 remedy was not available before those events? I believe it was. I believe you asserted that it was. Was that not in the amicus? It certainly was, but it's unassailable that in 2011 the conflict that we thought might exist actually came into conflict. If you thought it might exist, why would that not have been the time to have raised this intervention rather than waiting until a time when it might be a call to untimely? I'm not asking you to concede it's untimely, but you certainly have a time gap in there that was created by your own failure, the tribe's failure, to try to intervene. Well, the concept was certainly attempted in 2005, and we were brushed back by a decision of the district court denying the tribe's amicus motion. And so the tribe felt that it needed a very good reason then to come forward. And frankly, as the government is the tribe's trustee, we've had every reason to be entitled to rely on the government's representation of the tribe until something more significant came to light. And that did come to light in 2011 when after the mandate issued in the end of June of 2011, the tribe then waited again four months for the government to do something to move this litigation along. This litigation at this point is now almost 10 years old. After doing nothing for four months, the district court then issued an order requiring the parties to confer and file by November 7th a joint status report and proposed order reflecting a schedule on which this case should proceed upon remand. That order in October of 2011 gave the tribe deep concern. That was the principal thing that changed the tribe's concerns because, and I don't even think the government could explain to you what it might mean that we were going to address the merits once getting back to the district court. There were a lot of different things said in the circuit opinion, reversing and remanding, and it wasn't at all clear to us what the government was going to do. At the dismissal stage, the government, it was very clear, wanted to litigate the no action approval issue, and we thought that that was a proper basis for dismissal. It was reversed, and so that created a two-and-a-half-year time period during which our concerns What has been the downside of filing for intervention earlier? You're telling me all the reasons why you thought you could win without doing it, but that still does not really answer the question, what was the reason for not doing it? Why did you not move to intervene sooner? The tribe did file for amicus status in order to move forward. What was the reason for not filing for intervention? Your Honor, respectfully, I was not the tribe's counsel at that time, and I can't tell you what the reason was. You know, as I mentioned, timeliness is what the district court was determining, and I understand that we have the precedents that say you look at things other than time in determining timeliness, but I'm not sure that I still understand what the tribe is saying as to why it didn't make a more, quote, timely move to intervene. It didn't prior to when it did. It didn't prior to 2011 because the government appeared to be doing its job. But that's not a reason to not do it. That may be a reason why you thought we can prevail even if we don't, but that doesn't say that there's a downside to filing for intervention at that earlier time, and I'm frankly at a loss still as to why the tribe didn't make an intervention motion sooner. Well, I can tell you that the key thing we believe to look at within the timeliness, the four factors of the timeliness consideration under Rule 24 is not just elapsed time, which is what the court below focused primarily on in our view, and skipped purpose and need, but the key concern is whether intervention at this moment in time and not intervention generally will cause prejudice to the parties considering the evolution of the litigation. Here, this case now is almost 10 years old. The district court, just a couple things. Our standard of review is abuse of discretion, correct? Yes. And the district court did talk about, did identify the factors, correct? It did identify the factors. And then in discussing prejudice, did talk about how there would be delay on the bottom of 7 and the top of 8 of the district court's opinion. There would be further delay to the detriment of the existing parties. So the district court not only identified the factors, but then applied the prejudice factor, and maybe we could disagree with how the district court applied that, but abuse of discretion when the district court identified the factor and applied it. I understand. It did, in our view, not consider meaningfully or perhaps at all the purpose for which we intervened, which was to move Rule 19, and the need to do so to protect our interests. So I think that the district court glossed over at least two factors, and as for prejudice, which this circuit has said is the most important of those four factors, we believe that the statements were conclusory and didn't look at the evolution of this litigation and the fact that the county has been dilatory in prosecuting it. But I think you said earlier that the Rule 19 was available to you from the very beginning of the original complaint, right? It was, but it's clear to us that in 2011 the government took actions not only in this litigation. You knew through the course of this 10-year litigation that the government was not asserting the Rule 19, right? But inadequate representation, Your Honor, can arise later in the litigation. Never mind what it can be. Think about the question I asked you. You knew throughout this that the government was not asserting the Rule 19, right? We did. And you took no action to intervene through years of the government not asserting it, right? We did, but it became very clear to us. Is it so hard for us to say the district court abused discretion by not finding timeliness where a strategy that you knew was available was not pursued by the government through all those years, and now you're saying that we are entitled to come in because they did not pursue it? There are cases saying clearly that inadequate representation can arise late in the litigation. It arises late in the litigation. You say you agreed when I first asked you that the Rule 19 was available throughout the litigation, right? Well, what we said in 2005 and the reason for that amicus request was that we were concerned that the government may not adequately represent our interests. And, in fact, that came true in 2011. But you didn't move to intervene at that point. And you had that concern all that time. We did have that concern. The conflict didn't become actual until 2011 when they failed to move for Rule 19 dismissal and they said in litigation that the court below said is similar and raises many of the same matters that they have a policy of not taking a position on these sorts of cases. That's proven true here. The policy is not a Rule 19 policy, though. It's a Rule 24 policy, isn't it? In that case, Your Honor, it was a Rule 19 policy. But that can't be true because they're using Rule 19 in similar cases for other absent tribes. I read the exchange in the transcript. I thought it was talking about intervention. It was not. In my opinion, Your Honor, it was talking about Rule 19. We were talking about, at that time in September of 2011, the tribes of the Tribes Rule 19 motion. Okay. Well, I'll go back and look. I have a couple more questions. The first is that the status report that was filed in November of 2011 indicated that the case was ready for decision. It did. Has it been decided yet? It has not been decided yet. So it's been three years. And your intervention motion wasn't denied until June of two years, a year and a half later. That's right. Do you have any idea why this case has not been decided by the district court? Is it because of your appeal? I don't know, Your Honor. I don't know. But the case is nearly 10 years old because of the county's dilatory prosecution. Yeah, it is. Let me ask you one other thing. Is sovereign immunity a jurisdictional matter? The cases suggest that it's either jurisdictional or quasi-jurisdictional. Right. And I think that considering the purpose for which we intervene, which is Rule 19, that there should be an allowance here for the tribe to move to intervene late, just as if you consider the jurisdiction. Yeah, I just want to follow through on that. And your strategy is to intervene, raise Rule 19, claim sovereign immunity, and then have the case dismissed, right? That is correct. What do you do with the language if sovereign immunity is jurisdictional or quasi? It says under Rule 19, it says, A person subject to the service of process whose joinder will not deprive the court of subject matter jurisdiction must be joined. But if sovereign immunity deprives the court of jurisdiction, then you can't be joined anyway. I'm not entirely clear how the court below would handle that, but it certainly would be our claim that given our sovereign immunity, we cannot be joined in voluntary. I realize that the district court didn't directly address any of this, but what I'm sort of looking at is that in addition to the timeliness, the length of time, there are other considerations, not the least of which is that there's a serious doubt whether your Rule 19 theory would hold up, given the fact that you would deprive the court of jurisdiction, and that was your purpose of coming in. It was our purpose, and we think it's a good purpose, and it was used in a similar case in the Eastern District of California. It was upheld by the Ninth Circuit. I think the analysis is fairly straightforward that our claims are implicated, that those claims, those interests might be impaired in our absence, and that the government does not or may not, a standard that may not adequately represent our interests. I think that that analysis is somewhat straightforward. We've gone over that territory before. I'm not sure you're defining interest correctly. The interest that's subject, that is the subject of the lawsuit, is the compact. It is also. And the approval of the compact. So I know there are. We also have an interest in not having our interests adjudicated in our absence. That's a legal interest as well, which goes to sovereign immunity. Why don't we give you a couple minutes for rebuttal and hear from, thank you, your colleague. May it please the Court. My name is Dennis Whittlesey. I represent Amador County. And first let me ask the Court's indulgence. I have a hearing problem. I'm deaf in one ear, and I have a hearing aid in my good ear, so I'm a little bit short-eared here. Believe me, Counselor, you have the sympathy of at least one of the members of the bench. I have a remote control. Do you have one, Your Honor? I think, let me just clarify one thing. Mr. McCoy claims that they were surprised at all these things in 2011, that the U.S. was not filing a Rule 19 motion to dismiss for failure to join the indispensable party. And they were surprised at the inadequacy of what they perceived to be the U.S. representation. And yet, as Judge Rothstein noted in her opinion, in the amicus brief that was proposed with the motion for leave to file an amicus in the summer of 2005, after we, actually five months after we filed the lawsuit, in it, she quotes, the presence of the United States in this case does not fully protect the tribe's interests. Now, that's Judge Rothstein speaking, quoting their amicus brief. They knew from the beginning, because shortly thereafter, and I would imagine that there was dialogue between the tribe and the Interior Department. I'd be surprised if there wasn't, but there may not have been. Shortly thereafter, the United States filed its motion to dismiss. And it was on the APA. And this is an APA review. Now, as Judge Wald said in the Raymer case, there's a difference between interests and rights. And we admit that Buena Vista Rancheria has an interest in this litigation. And Mr. McCoy has said on more than one occasion in his brief, we have rights to be in this case. Well, and they've analogized it to the rights that were determined in the Friends of Amador County case. When Friends of Amador County, which was filed after our lawsuit, but I will say, there was a lot of plagiarism in the filings that we made for the facts and the allegations. It did track our lawsuit. We're seeking an APA review of this tribe's right to conduct gaming on this land. Not this tribe's right to exist as a tribe. This tribe's right to conduct gaming pursuant to the compact. And what relief are you praying in the amended complaint? The amended complaint, to be candid, was a vehicle. Tell me what the relief is you prayed in it. You don't need to be candid about anything else. To get Judge Roberts' attention. What is the relief you pray in the amended complaint? It's identical to the first. Reflect the relief you're asking for. Word for word. Reflect the relief you're asking for, please, counsel. That's correct. It was identical, which was... Tell me what the relief is that you are praying for. All right. I'm sorry, Your Honor. The relief we sought was a determination as to whether this land qualified for gaming under the Indian Gaming Regulatory Act as reservation land. And this has been briefed extensively. Now, the tribe has a right to game under its compact. May I interrupt you? I'm sorry. I didn't think that was the relief you asked for in the amended complaint. The amended complaint was that it was arbitrary and capricious for the Secretary not to make a finding that this was Indian country. And so that would require a remand back to Interior to make the finding, if they could. Well, we're challenging whether, as a matter of law, the decision the Secretary made was arbitrary and capricious in that the Secretary did render a finding in approving the compact amendment, which was site-specific. But we're asking, we're challenging that whether or not, as a matter of law, this land qualifies for reservation status. So you are asking, you are challenging the determination that this is reservation land. We are, Your Honor. So isn't that something in which the tribe has rights and interests? Well, reservation land under AIGRA for the purposes of gaming. But the tribe has rights. The difference between Friends of Amador and ours is this. The Friends of Amador challenged the rights to the compact itself, not the compact amendment, and challenged the tribe's right to exist as a tribe seeking an order that the tribe did not lawfully enjoy federally recognized status. We don't challenge those things.  The tribe has a right to do gaming. But even if this land has reservation status as a matter of law, then the APA will have run its course. We will have challenged. However, in this case, we're saying that the U.S. will prosecute this case, and this is consistent with RAMA, the tribe's not necessary here because it can do gaming on land that qualifies. If this land qualifies as a matter of law, the tribe can do gaming, can conduct gaming on this land. But as Judge Wald said, tribes are not necessary in RAMA, where the United States would have the courts construe the law in essentially the same way as the tribes. The Supreme Court has I don't know how many decisions dealing with two subjects. One, the reservation status of Indian lands, and two, the boundaries of reservations. Do you know whether in each one of those Supreme Court cases the tribe itself was a party? Are there cases in which the tribe was not a party? I don't, Your Honor. I think that in those cases, as with Friends of Amador County, there were issues above and beyond pure APA review that we are seeking here. We're seeking nothing more than a review. Let me switch gears. There's a line of cases in this circuit which certainly suggests that lapse of time alone is not sufficient to deny intervention and indicates that perhaps prejudice adds to the discretion of the district court to deny intervention. What is the prejudice here? What is the prejudice from allowing intervention in this case? None, Your Honor. If the tribe wants to waive its sovereign immunity and intervene, we would not object to that. But in the cases that have been cited here, as a general rule, the cases that Your Honor is discussing was intervention for the purposes of participating in the case of Roan and the case of, I think, the British American case, participating in the remedies provisions and helping develop the remedies. The AT&T case was to that same point. The Hoxton case was to the same point. Late intervention, untimely intervention in those cases. But people said, look, in the case of Roan and Hoxton, the interveners pledged that they would do nothing to upset anything they'd gone on before. They simply wanted to participate in the remedies, which in Roan's case was pretty gutsy because he was already exhausted his death sentence appeals, but there was a question about drugs, the cocktails that would be used in administering the death penalty. So if there's something that Mr. McCoy can tell us. Is there anything in addition to the lapse of time that serves as a reason to deny intervention? Well, Rule 24, and I think Judge Rothstein said this, timeliness is the predicate to the rest of the rule. And she said if it's late, game over. If it's untimely. The argument that it's untimely because they learned the U.S. wasn't going to be filing a Rule 19 motion might have been, that might have been a good reason back in 05 or 08 or 06, any other time. They've known all along. And they're coming in now for one reason, not as did Roan and the mind workers in Hoxton to intervene. This case has been ready for a decision for three years now. And there's been no decision. And maybe it's because the district judge is waiting to see what the outcome of this case is. But what that means is that the denial of intervention is what has delayed the case. Not the other way around. Not the motion itself. I would respectfully submit that Rhema gives us a good blueprint for this case, Your Honor, to answer that question, which is Rhema, Navajo was a case in which there was a challenge by that tribe for secretaries, administration, or allocations of self-governance funds. And the argument was made, well, wait a minute, how about all the other tribes in America that also are going to benefit or are going to have an interest in this matter? But do they have rights? And the court said, well, we're not going to go there because the government, again, as I said before, the government is going to litigate this case, litigate the courts to construe the law in essentially the same manner as the tribes would. Mr. McCoy has not told us in one way other than they didn't move to dismiss this case on the basis of sovereign immunity, failure to join an unjoinable party, what he would do differently in this case so far. Well, if the government had moved to dismiss for lack of, for failure to join a tribe which has sovereign immunity, that means that all compact decisions of the Secretary of Interior are immune from judicial review. It means more than that, Your Honor. It literally means that any decision the Secretary makes affecting tribes or a tribe, and of course to the administrative decision-making process at Interior, is subject to dismissal if somebody files an APA review because that tribe or the tribes were not joined. I think Judge Wald dealt with that in the Ramah case. And you can't join a tribe. They know they can't. There may be limits to Rule 19 for the purposes of intervention, and we've not gotten to that point because they've done what they've done. But in this case, you can't. If joining a tribe is essential to administrative review of a decision of a matter in which a tribe has an interest, not a right but an interest, then there could never be an APA review of a Secretary decision in Indian country. And, you know, I don't think that's what was intended by Congress when that law was passed. And, indeed, as a lot is made about. Well, we've had, we had recently had a case which was relied upon by the appellate court when the first go-around here, the Patchak case, which went up to the Supreme Court. And it's clear that that is a reviewable decision by the Secretary of the Interior. The Supreme Court so indicated, so held, and the case name changed from the time. It was also just legislated out of existence, but that issue. But Patchak did claim an interest, an interest and a property right to his, if you will, the quiet enjoyment of his property, which was down the road from where this casino was to be built. And, again, the rights that the tribe has in this case, they have a right to game unchallenged by my lawsuit. They have a right to exist as a tribe unchallenged in my lawsuit. They have an interest in gaming on this land. But if they can't game on it, I think, as the court asked the question earlier, the tribe can use it for any other purpose other than those purposes, other than within the stricture of the limitations of the Indian Gaming Regulatory Act. I should probably ask the tribe's attorney this question, but who holds title to these 60-some acres? Well, I believe the title is in fee-simple ownership by individuals. Now, there may have been by two individuals. Tribal members or? One claimed she was the only member of the tribe and was removed by the Bureau of Indian Affairs and she owned the land in fee-simple, and the BIA replaced that single member with another single member and who is now with her family, the tribe. But I don't know, and perhaps Mr. McCoy does, I don't know that there's ever been a transfer in fee ownership to the tribe. I don't know that. Yeah, the way it usually works is that the way it has worked in the past is that the tribe goes out with funding from gambling interests and buys a hunk of land and then turns it over to the Secretary of the Interior to hold in trust for the tribe and that qualifies it for gaming purposes. That was not done here, right? That was not done in this case. There's a statutory tract that's provided for in language that is not as clear as I'm about to tell you, but it's in the regulations. The tribe must acquire fee-simple title free of all liens and tendered to the Secretary to be taken in trust for the tribe and pursuant to 25 U.S.C. 465, which is the only authority the Secretary has to take land into trust. In general, the Secretary takes the land into trust and the land is then in trust. Now, once in trust, the Secretary can designate reservation status on motion. So it's 25 U.S.C. 467, I believe. I know I'm right. And then reservation status can be proclaimed. And that's the statutory vehicle for proclaiming reservation status as a matter of federal law. So they could get there, and we probably wouldn't be in this court had they have gone through the trust process, but they prefer to use this rancher re-determination restoration law, which is murky at best, and the hardwood stipulations are murky at best, and that's what we're looking at. We're getting way beyond this case, I think, with what you just went into with Judge Randolph. Now, there are many reservations around the country that have gambling that have been reservations for a long, long time. Did they have to go back through putting that in as fee land and then transferring it to trust? No, Your Honor. Most of the reservations with which we're familiar were treaty reservations. The treaty ethic ended as of a treaty that was executed the last one in 1867. But not all those reservations that have gambling were treaty reservations. There are reservations that have been established pursuant to federal law. There were reservations that preexisted the Gambling Act that were not treaty reservations. That's correct. They were executive ordinal reservations. There's examples of tribes that were recognized by act of Congress or land claim settlement acts, as in the state of Michigan,  Qualla Boundary on the eastern Cherokee was not a treaty reservation. That was an executive order reservation, for example. On which? Qualla Boundary, the eastern Cherokee reservation. Oh, okay. I'm not sure how that attained reservation status, but it had to. In the 1930s, the Qualla Boundary was established by presidential order. I can tell you who headed the commission that went into the boundary, if you'd like. I'm sure you can. I wish I worked for those people. They're doing real well down there. I can't tell you how that one was created, but I have a mantra. I'm one of those lawyers that practices on both sides of the table. Some will tell you that I'm the worst person in the world, but I take cases. I don't take causes. I have a mantra, though, in Indian country. Every deal is different. If you'll give me the name of a reservation, and I'll send Mr. Sullivan over here to the computer, and he can tell you exactly how that, although I think you already know, became a reservation. There are many ways that property can gain reservation status, and I explained one of them. Another would be a specific act of Congress. There are many ways. But you are attempting in this lawsuit to end the Indian land status of this piece of land, at least for gaming purposes. We're challenging. Actually, I agree, Your Honor. It doesn't suggest, at least, that there is a right and interest in the tribe to litigate that subject matter. If they had intervened in a timely manner and wanted to come in and participate in the case. So we come back to timeliness in a broad sense, not just a statutory sense. But then I thought I understood you to tell Judge Randolph that there was no prejudice from the lapse of time here, just the lapse of time. No, I did not say that. Well, that's what I thought I understood. I'm afraid you did. I'm afraid you did. You may not have understood it. You mean it. If I said it, I know you think you heard what I said. I heard what you said. I don't think you heard what Judge Randolph asked. I think the President said, but what you know is not what I meant, or what I said is not what I meant. Anyway. What is the prejudice to you, the existing parties, from allowing a motion to intervene here? Oh, I did say none. I said none. I think you did say none. If the tribe would waive its sovereign immunity and come in to participate, as in the Rome and as in the Hoxton cases. Now go back and answer my question. What is the prejudice? You said none. Now that's the only answer I have to that question. What is the prejudice? The prejudice of what they're seeking justice until is they don't want to litigate the case. They want to cut the case off. Tell me what the prejudice is to your party. Excuse me for shouting, but you said to begin with that you were hard of hearing. I am too. All right. If I can answer your question, but it's off. I mean, it's not on. You better answer my question, please. This site is part of a discharge point in the county's water aquifer. What is the prejudice to your party to allowing an existing party to allow the late intervention? Question mark. All right. If they would intervene, none. If they want to intervene and cut this litigation off without a determination of the merits, then my client is prejudiced because my client claims legitimate rights of interest. So your prejudice is you might lose. Prejudice is I might lose? I'm sorry? I thought the district court said. No, there's no prejudice if they want to intervene and participate in the litigation. We'll litigate it fair and square. I thought the district court said the prejudice was the tribe's intervention will further delay resolution of the merits to the detriment of the existing parties. That's what the district court said. Are you defending that or not defending that? I'm defending what I said. The intervention has already delayed this case. This motion has already delayed this case. Again, if they want to come into the case and participate as a litigant, that's fine. We would welcome that. But that's not what they're asking for. They want to get into the case to kill it. Before you conclude, is the United States and the Department of the Interior, is the Department of the Interior mounting an argument that the 60-some acres that we're talking about is a reservation? That's the argument. The United States is making that argument. That's the argument. In fact, Judge Sintel asked Katherine Hazard when we argued this case before, so you're coming in under 25 U.S.C., 27034A, which is reservation, and not B, which is other kinds of land to qualify. She said that is correct. That issue was clarified previously. The question is, is this reservation land? That's the issue to litigate. Thank you. Thank you, Your Honor. Most importantly, as to prejudice, if the county is going to let us in to participate in the litigation and it's admitting there's really no prejudice that it can identify at this point, then we win. The test is not whether the purpose of the intervention will prejudice the county. The test is whether the intervention at this point in time will prejudice the county. Well, I thought the district court said it would further delay the litigation, at least under the Rowan case and other cases we have. That was the factor that was not present that we found to be an abuse of discretion. So going back to our standard of review being abuse of discretion, the district court identified the relevant factors, said there would be further delay. Maybe that's not what we would have said, but why is that an abuse of discretion? Well, it actually could lead to a quicker resolution of this case if the case is dismissed. Number two, our trustee isn't here claiming that it's going to be prejudiced. The county just said it would be fine if we intervened in the case to participate. So it's really very difficult for us to identify, especially considering that we're not interrupting four years of depositions. We're not interrupting a trial date. We're not interfering with jury work. I know you're not a party to the case, but do you know have there been any status calls? No. In the three years since the case was ready for decision? I am not aware that there have been. We've been looking at the docket, and that's one thing we've been hoping our trustee would do, was push this thing along. Isn't it fairly common, and I don't know how much litigation you do in district courts, but for district judges not to have status calls while there is an interlocutory appeal of some sort pending? I don't know that that might be true, Your Honor. I know it used to be. There have been many periods in this litigation, for months and even years, when the plaintiff didn't prosecute its own case, when the defendant didn't act in the best interest of the tribe. So I think on the key test under timeliness, which is prejudice, you just heard the county say it's not prejudice if we intervene at this point. It's concerned about our winning on the Rule 19 motion. That's not the test. The test clearly is. What the district court said was the further delay, and you think that's an abuse. What the district court said at the top of the opinion, you think that qualifies as so wrong as to be an abuse of discretion. We think that's an abuse of discretion, considering that purpose and need also were not considered in that. No, but just focus on that alone for now. The district court says defendant's motion to dismiss was filed and is still pending on the merits, involves the same parties, and because the parties have represented that the case is otherwise ready for decision, the tribe's intervention will further delay resolution of merits to the detriment of the existing parties. The time the district court said that, was that so wrong as to be an abuse of discretion? We believe it was, Your Honor. We've been proven right. How long was the delay in NAACP versus New York? I don't know the answer to that. Six months, I think. I don't know. We waited four months after the remand happened here for the government to do something to push the case along. Do you know what case I'm talking about, the Supreme Court decision? Yes, I don't know the time period that was there. And the court held it was not timely, the intervention motion by the NAACP. Right. Well, timeliness must be considered in relation to these circumstances, these facts. It's not an objectively measurable construct. It would be, I take it, your position that what the district court relied on is not really the fourth factor, the prejudice factor, that was simply a restatement of the first factor, lapse of time. That's right. We read that opinion as relying 95% on a lapse of time, and that certainly isn't the test. Just to answer a few other questions. It may be the most important part of the case. We think, well, the cases say we're timely. Timeliness has something to do with this. But in relation to what? Are you interrupting active litigation? And we certainly aren't. The parties are apparently happy to sit by and let this case sit on the docket. It's the tribe that's detrimented here, and there's a cloud on the tribe's ability to move forward and do economic development. Let me propose something to you and get your reaction to it before you sit down. Let's suppose that you're correct, that the district court considered only lapse of time and did not really articulate an acceptable basis for prejudice. But it also turns out that the United States is adequately representing the tribe's interest in the case, in which case you would not be allowed to intervene. Can we hold that the district court's failure to articulate prejudice was harmless, Eric, because you weren't entitled to intervene anyway? I don't believe so, Your Honor. On specifically the purpose for which we intervened, to move for Rule 19 dismissal, it's unassailable, unquestionable that the government did not represent our interest on that point alone. So that makes this case like smoke and like United Airlines that talk about interveners, moving to intervene at the time of appeal. You're defining your interest as sovereign immunity, and that's not the test for intervention. The intervention is the interest that's the subject of the lawsuit. Sovereign immunity is not the subject of this lawsuit. You want to make it the subject, but at the moment it is not the subject of this lawsuit. Isn't that correct? I don't believe so with respect, Your Honor. I think that that is an interest in this litigation of the tribes. No, no, no. Is it the subject of the lawsuit, sovereign immunity? No, the subject of the lawsuit is the compact. And Section D of the complaints prayer says, declaring that the Buena Vista Rancheria is not Indian lands as defined by AGRA. That's us. That's not the government. That's our interest, and we need to defend that. On the timeliness, again, I thought Rowan, which is a case you rely on. Yes. The problem in Rowan was the district court had solely looked at the time that it elapsed. Solely is what we said. Here the district court did not just do that. It looked at the time that it elapsed and looked to the delay that would ensue, and it seems to me that's specifically what Rowan identified as the flaw of the district court there, the mistake the district court there had committed, which the district court here did not commit. Rowan made it absolutely clear that the most important of those core factors is prejudice, and we think prejudice. Right. But then in analyzing that, if you look at Rowan, what it talked about was would there be further delay, any further delay to the litigation from allowing the intervention. And the district court there had not looked at that at all, at all. Whereas here, the district court did look at that. Maybe you would say too briefly, but it did identify that and look at that and make a determination that there would be further delay, which does distinguish this. At least I had come in thinking Rowan, that was the mistake the district court had made in Rowan. The district court here did not make that same mistake. We would agree with that statement, Your Honor, that that was an underdeveloped piece of the court's analysis. And it's got to be the most developed piece of the analysis because that's what this circuit has said. That's the most important thing. How is intervening at this moment in time, considering the evolution of the litigation, going to interfere with the stage of the litigation, going to undo things that have been done? It doesn't say that. It doesn't say things about undo. Just delaying, it sounds like from Rowan, just delaying the case further would... Delaying to the unfair detriment of the parties. I'm having a hard time, especially when the county just conceded that it would allow us to intervene generally, how the county is going to be detrimented or unfairly detrimented. Again, the test is not intervention generally. The test is intervention at this moment in time. It already has been. I mean, it's hard to look at what's happened post the district court's decision because we don't know what, as Judge Santel said, what was going on. At any point in this appeal or the notice of appeal that was filed in the district court, did you suggest or argue that your appeal would deprive the district court of jurisdiction? We did not. We raised the concern that Rule 19 is jurisdictional and, therefore, it may be considered at any time. No, no, no, the appeal. That's what we argued. Oftentimes an appeal will deprive the district court of jurisdiction until the appeal is decided. This is an interlocutory appeal, and I'm just wondering whether you made that suggestion or the district court indicated in any way that that was the case. We did not, Your Honor. We did not. It's clear to us also, finally, that REMA does not govern this case. In that case, the government actually did move for Rule 19 dismissal. The absent tribe's interest in that case was very generalized, up to $100 of interest per tribe, and so that was a pure APA concern. The plaintiffs there were attacking the procedure by which those allocations were made. Here, the basis of the complaint is that our rancheria doesn't qualify as a reservation under federal law. That's not a pure APA concern. That's a substantive concern going to the tribe's interest, not the government's. Thank you. Thank you. The case is submitted, and we'll take a brief break.